## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TRENT DAY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ADVANCE STORES COMPANY, ) <br> INC., ) <br> ) <br> Defendant. ) | **MEMORANDUM OPINION <br> AND RECOMMENDATION** <br><br> 1:09-CV-664 |

This matter is before the court on a motion to dismiss or, alternatively, for summary judgment by Defendant Advance Stores Company, Inc. (docket no. 7). Plaintiff has responded in opposition to the motion, and the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge. Therefore, the motion must be addressed by recommendation. For the following reasons, it will be recommended that the court grant Defendant's motion for summary judgment.

**BACKGROUND**

Plaintiff Trent Day is an African-American male who was employed by Defendant from October 2004 until his termination on October 3, 2008. In this suit, he alleges race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and breach of North Carolina public

policy, as well as a separate count for punitive damages. Plaintiff filed his complaint in state court on July 28, 2009, and Defendant removed the action to this court on August 28, 2009.

This is the second lawsuit brought by Plaintiff in this court against Defendant in which he has alleged race discrimination and retaliation related to his employment with Defendant. In Plaintiff's first lawsuit, filed in September 2007, Plaintiff's claims of discrimination and retaliation related primarily to his transfer from one of Defendant's stores to another store after an incident with a customer in which the customer used a racial slur against Plaintiff. *See* Memorandum Opinion and Recommendation of U.S. Magistrate Judge, *Day v. Advance Stores Co.*, Civil Action No. 1:07-cv-726 (M.D.N.C. Aug. 28, 2008), adopted by the district court on November 4, 2008 (attached as Exs. A & B to Def.'s Motion, docket no. 8). Plaintiff filed his first U.S. Equal Employment Opportunity Commission ("EEOC") Charge on February 20, 2007, detailing the allegations leading to his first lawsuit against Defendant. In the first suit, this court granted Defendant's motion for summary judgment, thus rejecting Plaintiff's discrimination and retaliation claims.

While his first lawsuit was being litigated, Plaintiff filed a second charge with the EEOC on November 2, 2007, alleging race discrimination and retaliation, in which he complained that one of his managers had reduced his hours, was "nitpicking" Plaintiff regarding store procedures, and had refused to provide Plaintiff with necessary training. Plaintiff contends that he "self-demoted" to avoid being

terminated. (*See* Ex. C to Def.'s Motion; EEOC Charge No. 435-2008-00109, Day Ex. 7.) EEOC completed its investigation of the 2007 EEOC charge and issued a finding of no probable cause and a notice of the right to sue on April 29, 2009. Plaintiff commenced this action in Guilford County Superior Court on July 28, 2009, and Defendant removed the action to this court on August 28, 2009. Defendant now seeks dismissal of Plaintiff's action or, in the alternative, summary judgment, on the grounds set forth below.

**UNDISPUTED FACTS**

Defendant hired Plaintiff in October 2004 as a part-time salesperson assigned to its store in Graham, North Carolina. Plaintiff was promoted to full-time salesperson in February 2005, and he was further promoted into a management position as Second Assistant Manager in July 2006. Plaintiff had no race-related issues or problems with supervisors or employees at the Graham store until an incident in February 2007 that was the subject of his first EEOC charge and subsequent lawsuit.

In the February 2007 incident, a customer at the Graham store allegedly called Plaintiff a racial slur and Plaintiff refused to serve him. After the customer called to complain to Plaintiff's manager Bryce Morgan, Morgan questioned Plaintiff, who told him only that he refused to serve the customer. Morgan sent Plaintiff home, telling him that his employment was terminated. Plaintiff subsequently complained to Division Manager Jimmy Wright and Regional Human Resources

Manager Alan Maxwell, who took immediate steps to assure Plaintiff that he had not been terminated.  The parties agreed that Plaintiff would transfer from Graham to Defendant's Church Street store.  In the first lawsuit, Plaintiff acknowledged that Morgan did not want Plaintiff back in the Graham store for reasons that had nothing to do with race.  After his transfer to Church Street, Plaintiff remained an Assistant Manager with the same pay, job duties, and hours.  Plaintiff was initially supervised by Andrew Young, who Plaintiff did not get along with for reasons other than race.

At some point, a new manager, Joseph Johnson, began supervising Plaintiff.  Plaintiff alleges that he was subjected to a hostile work environment and retaliation under Johnson's management.  After Plaintiff voiced his complaints about Johnson, Defendant again transferred Plaintiff, at his own request, from the Church Street store to another store.  Around ten months after his transfer from the Church Street store, Plaintiff sent a letter to Defendant's CEO, in which he made threatening remarks, including that "the employees plus the customers make one feel like killing at times," and that "I Hate Them."  (*See* Letter from Trent Day to Darren R. Jackson (July 7, 2008), Alan Maxwell Aff. ¶¶ 4-5, attached as Ex. E to Def.'s Motion.)  In response to the letter, Defendant initially suspended Plaintiff with pay, pending a mandatory EAP referral and counseling.  Defendant terminated Plaintiff's employment on October 3, 2008.

In the court's November 2008 Order granting Defendant's motion for summary judgment in Plaintiff's first lawsuit, the court adopted the Recommendation by the

undersigned finding that Defendant did not discriminate against Plaintiff in violation of Title VII when it "temporarily" terminated him or transferred him to the Church Street store for reporting racial harassment by a customer. The court further held that Defendant did not retaliate against Plaintiff for reporting racial harassment by a customer. The court specifically declined to address any of the allegations in Plaintiff's November 2007 EEOC Charge related to the alleged conduct by Plaintiff's new manager Johnson because that charge was still pending when the court ruled on Plaintiff's discrimination claims.

As Defendant notes, Plaintiff's November 2007 EEOC Charge and this lawsuit essentially pick up where his first lawsuit ended. That is, in this lawsuit Plaintiff alleges that after his transfer to the Church Street store, Defendant retaliated against him by reducing his hours and assigning him harder work, and that he was forced to "self demote" to avoid allegedly discriminatory actions by his new manager Johnson. (Ex. C to Def.'s Motion.) More specifically, in the EEOC Charge filed on November 2, 2007, Plaintiff alleged the following:

> I have been employed with Advance Auto Parts since October 2004. I currently work at the above location. In the past, I filed a charge of employment discrimination with the EEOC against the company. Subsequent to filing the charge of discrimination, my hours have been reduced. Subsequent to Joseph Johnson becoming Manager of the above location, he has been nitpicking me regarding store operating procedures and has been hostile toward me. I consider his actions to be harassment. I asked him to train me on how he wanted things to be done. He said he didn't have time. I requested to be demoted. In order to avoid being terminated, I felt forced to self-demote from Second Assistant Manager to the position of Salesperson.

> Subsequent to my self-demotion, my pay was cut. I am required to close the store more and to perform more closing duties than any of the other employees in my store. I am the only Black employee in the above store.
>
> Even though my hours have been reduced, several employees have been hired to work in this store. All of them are White. Some of them are part-time and receive more hours than I. I am a full-time employee. There were several qualified Black applicants for these positions, but none of them were hired. I am aware of White employees who self-demoted, but their pay was not cut.
>
> I believe that I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, due to my race (Black) and in retaliation for having filed a charge of discrimination with the EEOC against the company.
>
> I also believe that the company discriminates against Blacks in hiring, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Ex. C to Def.'s Motion.)

**STANDARD OF REVIEW**

Defendant's pending motion is for dismissal or, alternatively, for summary judgment, and discovery has not yet commenced in this case. Defendant has submitted materials outside the pleadings–including excerpts from Plaintiff's deposition taken in the first lawsuit–in support of the motion. In response to the motion, Plaintiff has also submitted excerpts from his deposition taken in the first lawsuit. Federal Rule of Civil Procedure 12(d) states that where materials outside the pleadings are presented to and not excluded by the court, the court must treat a motion to dismiss as a motion for summary judgment under Federal Rule of Civil

Procedure 56. FED. R. CIV. P. 12(d). In such instance, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Formal notice from the court is not required where, as here, the motion clearly seeks summary judgment as an alternative to dismissal. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (holding that the district court did not err by treating a motion as one for summary judgment where the defendant filed a motion to dismiss or, alternatively, a motion for summary judgment, and stating that "[b]ecause appropriate notice was ample, [the plaintiff's] attorney had the responsibility, if he thought further discovery was necessary to adequately oppose summary judgment, to make a motion under Rule 56(f)").

Here, Plaintiff has clearly been put on notice that Defendant is seeking summary judgment as an alternative to dismissal.[1] In response to the motion, however, Plaintiff has neither argued that the parties have not had time to conduct discovery, nor has he submitted an affidavit under Federal Rule of Civil Procedure 56(f) explaining why he could not adequately oppose Defendant's motion without taking additional discovery. *See* FED. R. CIV. P. 56(f). Therefore, this court can properly treat Defendant's motion as one for summary judgment.

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.

---

[1] Indeed, Plaintiff's response brief is titled "Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss and/or for Summary Judgment." (docket no. 11.)

-7-

R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

**Defendant's Contention that Some of the Allegations in Plaintiff's Complaint Are Barred by Res Judicata Principles**

In support of its motion for dismissal or summary judgment, Defendant first contends that some of Plaintiff's claims of harassment and retaliation are barred by

the court's judgment in his first lawsuit. Defendant notes that Plaintiff's complaint includes vague allegations that span the entirety of his employment with Defendant, and many of these allegations overlap with those made in the first lawsuit. For instance, Plaintiff alleges that he was subjected to and complained about racially hostile treatment by various customers and that he was retaliated against "by work assignments, work locations, reduced working hours, and denial of necessary training." (Compl. ¶¶ 4, 6.) He also apparently seeks to relitigate certain factual issues, such as this court's prior finding that Plaintiff never told anyone about an alleged noose that he found in the workplace until a mediation conference in February 2008. (*See* Compl. ¶ 4 & Ex. A to Def.'s Motion.)

In order for res judicata to bar an action, there must be (1) a final judgment on the merits in an earlier suit; (2) an identity of the cause of action in both the earlier and the later suit; (3) and an identity of parties or their privies in the two suits. *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981). This court's previous order granting summary judgment to Defendant was a final judgment, there is an identity of the cause of action in both that suit and in this lawsuit, and the parties are identical. Therefore, Plaintiff's claims of retaliation and discrimination regarding his employment up through the time Johnson became store manager at the Church Street store and when Plaintiff filed the November 2007 EEOC Charge have already been decided by this court. Thus, to the extent that Plaintiff is

attempting to revisit those issues in this lawsuit, they are barred by res judicata and should be dismissed.

**Defendant's Contention that to the Extent that Plaintiff Seeks to Challenge the Termination of His Employment in October 2008, He Has Failed to Exhaust His Administrative Remedies**

In his complaint in this lawsuit, Plaintiff alleges that he was discriminated against in part because his "employment was terminated for a second time," and he seeks reinstatement. (Compl. ¶ 3, Prayer for Relief ¶ 2.) Thus, Plaintiff appears to base his race discrimination claim here in part on his termination from employment in October 2008. Defendant contends that Plaintiff's claim for race discrimination based on his termination in October 2008 is barred for failure to exhaust administrative remedies because he has not yet filed an EEOC Charge complaining of the October 2008 termination. I agree.

The timely filing of a charge of discrimination and exhaustion of administrative remedies at the EEOC is a prerequisite to filing an action under Title VII. *See* 42 U.S.C. § 2000e-5(b). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). A plaintiff fails to exhaust administrative remedies where "his administrative charges reference different time frames, actors, and

discriminatory conduct than the central factual allegations in his formal suit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005).

Plaintiff's November 2007 EEOC Charge alleges race discrimination and retaliation by a single supervisor, Joseph Johnson, and only during the brief period that Plaintiff worked under Johnson at the Church Street store. Plaintiff alleges in the EEOC Charge that the following conduct was discriminatory: a reduction in hours, a cut in pay, "nitpicking" and refusal to train by Johnson, and an alleged self-demotion. (See Ex. C to Def.'s Motion.) Moreover, the "latest date" on which discrimination is alleged to have occurred is November 2, 2007, and the box for "continuing action" is not checked. Plaintiff was fired in October 2008, and he has not shown that he has ever filed an EEOC Charge with regard to his firing. Therefore, to the extent that Plaintiff is attempting to base his race discrimination claim on his firing in October 2008, he has not exhausted his administrative remedies as to that claim.

**Defendant's Contention that Plaintiff Cannot Prove a Case of Harassment or Retaliation Based on Johnson's Treatment of Him**

Here, I have already concluded that some of Plaintiff's claims of discrimination are barred by res judicata principles because this court has already ruled that there was no discrimination during the time periods alleged in Plaintiff's first lawsuit. Furthermore, Plaintiff has not exhausted his administrative remedies as to the discrimination claim based on his firing in October 2008. Thus, the only claims of

-11-

discrimination before this court are the claims alleged in the November 2007 EEOC Charge–that Johnson subjected Plaintiff to a racially hostile work environment and retaliated against Plaintiff for filing the earlier EEOC Charge.

To demonstrate a racially hostile work environment claim under Title VII, Plaintiff must show that (1) he was subjected to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001). Plaintiff must demonstrate both that he subjectively perceived the workplace environment as hostile and that it was objectively hostile as well. *Id.* at 184. Factors to consider in determining whether harassment is severe or pervasive are (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it was physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interfered with an employee's work performance. *Id.* The Fourth Circuit has "recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Id.*

Here, Plaintiff simply cannot meet his burden of establishing a hostile work environment due to his race because he fails to show a causal link between the alleged harassment and Plaintiff's race. Plaintiff contends that his supervisor Johnson "harassed" him and otherwise subjected him to a hostile work environment by "nitpicking" him, cutting his hours, and refusing to give him needed training.[2] During discovery in the first lawsuit, Defendant took Plaintiff's deposition and questioned him about all aspects of his employment from his date of hire up through the date of the deposition on April 1, 2008. (*See* Pl.'s Dep., Ex. D to Def.'s Motion.) Plaintiff's testimony in his deposition makes clear that Plaintiff's race was simply not the cause of his alleged problems with Johnson. The evidence shows, rather, that Plaintiff decided even before Johnson became his store manager that he could not work with him because of a personal situation involving Plaintiff's friend and Johnson's former wife. (Pl.'s Dep., pp. 55-59, 69-72.) More specifically, Plaintiff's friend, who is African-American, had impregnated Johnson's wife while Johnson and his wife were still married.[3] In addition, with regard to the self-demotion, Plaintiff conceded that it was due to the incident with Johnson's wife rather than Plaintiff's

---

[2] To the extent that Plaintiff alleges in the Complaint that he found a noose in his locker at work, as Defendant notes, this court found in Plaintiff's first lawsuit that Plaintiff did not tell anyone at work about the noose; therefore, the alleged noose incident cannot give rise to liability against Defendant.

[3] Plaintiff testified similarly in his first lawsuit that his personal issues with another former supervisor Bryce Morgan were due to the fact that one of Plaintiff's friends had had sex with Morgan's wife. (*See* Mem. Opinion and Rec., p. 19, attached as Ex. A to Def.'s Motion.)

-13-

race.[4] (*Id.*, pp. 87-90.) After meeting with supervisors and voicing complaints about Johnson, Defendant transferred Plaintiff, at his own request, to another store. Here, because Plaintiff has not met his burden of showing that he was subjected to a hostile work environment because of his race, Defendant is entitled to summary judgment as a matter of law as to this claim.

Similarly, Plaintiff fails to produce evidence sufficient to withstand summary judgment as to his retaliation claim. To establish a prima facie claim for retaliation, a Title VII plaintiff must produce evidence from which a reasonable jury could find that (1) he engaged in protected activity; (2) the employer took materially adverse action against him such that it could dissuade a reasonable worker from making or supporting a charge of discrimination or from otherwise engaging in another form of protected activity; and (3) a causal relationship existed between the protected activity and the materially adverse activity. *See Burlington N. & Sante Fe Ry. v. White*, 548 U.S. 53, 68 (2006); *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

Here, Plaintiff contends that in response to Plaintiff's complaints about discrimination against him, and in response to his filing EEOC Charges in February 2007, his managers retaliated against him by "work assignments, work locations,

---

[4] Plaintiff attempts to attribute a racial motive to Johnson's treatment of Plaintiff since Plaintiff's friend who had sex with Johnson's wife was African-American, and Johnson is white. These facts simply do not lead to the inference that Johnson's purported treatment of Plaintiff was based on *Plaintiff's* race.
-14-

reduced working hours, and denial of necessary training in his second assistant manager position." (Compl. ¶ 6.) He also contends that "[n]ew hire part-time employees were given more work hours than Plaintiff." (*Id.*) As with the hostile work environment claim, Plaintiff's own deposition taken in his earlier lawsuit demonstrates that the alleged actions taken against him were the result of a personal conflict between himself and Johnson that had nothing to do with Plaintiff's complaints of racial discrimination. In sum, Plaintiff simply fails to present evidence sufficient to withstand summary judgment as to his retaliation claim.

In any event, as Defendant notes, Defendant took prompt, remedial action to address Plaintiff's complaints about Johnson's alleged retaliation against him; thus, Defendant cannot be liable for the alleged retaliatory acts by Johnson. After Plaintiff complained about Johnson, Defendant promptly transferred Plaintiff from the Church Street store to another store where Plaintiff was reunited with a former manager Randy Lambert, with whom Plaintiff had never had any problems. (*See* Ex. A to Def.'s Motion; Day Dep., p. 73.) Defendant also addressed Plaintiff's concern over his reduced hours by assuring Plaintiff that he would work 32 hours or more a week upon his transfer. Moreover, Defendant had a written, anti-harassment policy that provided a mechanism for complaints by employees. (*See* Ex. D to Def.'s Motion.) To the extent that Defendant had this policy in place and also took prompt, remedial action after Plaintiff complained about Johnson, Defendant cannot be found liable for the alleged conduct by Johnson that did not rise to the level of tangible

-15-

employment actions, such as "nitpicking," reducing Plaintiff's hours, refusing to train Plaintiff, etc. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763-66 (1998). In sum, for all these reasons, summary judgment should be granted to Defendant as to Plaintiff's claims for discrimination and retaliation.

**Defendant's Contention that Plaintiff's State Law Claim for Violation of North Carolina Public Policy Fails to State a Claim upon Which Relief Can be Granted**

Finally, Plaintiff makes a vague reference in the Complaint to the "public policy" of the State of North Carolina and alleges that Defendant's conduct has violated that public policy. (Compl. ¶ 9.) Presumably, Plaintiff is referring to the North Carolina Equal Employment Practices Act, N.C. GEN. STAT. § 143-422.1 *et seq.*, which states in pertinent part:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. GEN. STAT. § 143-422.2. Plaintiffs may not, however, bring wrongful discharge claims under Section 143-422.2 based on alleged racial harassment or retaliation. *See McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003) (noting that a plaintiff may not use Section 143.422.2 as a vehicle for bringing a wrongful discharge claim based on harassment or retaliation). Therefore, Plaintiff has failed

-16-

to state a claim for wrongful discharge under Section 143-422.2, and this claim should be dismissed for failure to state a claim.[5]

**CONCLUSION**

For the reasons stated herein, **IT IS RECOMMENDED** that the court **GRANT** Defendant's motion for summary judgment (docket no. 7) and dismiss this action with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

March 29, 2010

---

[5] Indeed, Plaintiff does not even assert an argument regarding this claim in his opposition brief, and he has therefore waived this issue. *See Brand v. N.C. Dep't of Crime Control & Pub. Safety*, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004).